UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TIMOTHY S. DOSS**,

                Plaintiff,

v.                                    **Case No. 15-cv-6-pp**

**Sgt. Sweetman,** *et al.*,

                Defendants.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS* (DKT. NO. 2) AND SCREENING PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 9)**

---

On January 5, 2015, Timothy S. Doss, an inmate at Green Bay Correctional Institution (GBCI), filed a *pro se* complaint (Dkt. No. 1) under 42 U.S.C. §1983. He filed an amended complaint (Dkt. No. 9) on March 9, 2015. The case comes before the court on plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2), and for screening of his amended complaint (Dkt. No. 9).

**I.    MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

The Prison Litigation Reform Act gives courts discretion to allow prisoners to proceed with their lawsuits without pre-paying the $350 filing fee, as long as they comply with certain requirements. 28 U.S.C. §1915. One of those requirements is that the prisoner pay an initial partial filing fee. On January 7, 2015, the court assessed an initial partial filing fee of $22.65. Dkt.

No. 5. The plaintiff paid that fee on February 5, 2015. Accordingly, the court grants plaintiff's motion to proceed *in forma pauperis*.

## II. SCREENING OF PLAINTIFF'S COMPLAINT

If it's early enough in the litigation, Federal Rule of Civil Procedure 15(a)(1) allows a plaintiff to amend his complaint one time without the court's permission. The amended complaint takes the place of the original complaint. Accordingly, the court will not consider any of the allegations in plaintiff's original, January 5, 2015 complaint.

### A. Standard for Screening Complaints

Federal law requires that the court screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss part or all of a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully

2

construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in *Twombly*. First, the court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. *Id.* Second, if there are well-pleaded factual

3

allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendant(s): 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. *Buchanan-Moore v. Cnty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give a plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

B. <u>Facts Alleged in the Complaint</u>

The amended complaint reveals that the plaintiff has sickle cell anemia. Dkt. No. 9 at 1. The plaintiff explains that sickle cell anemia is a genetic disease, which "causes the body to break down too many red blood cells (RBCs). . . . The signs and symptoms of sickle cell anemia are: Fatigue, pale skin, frequent headaches, shortness of breath, and pain throughout the body." Dkt. No. 9 at 8. The disease increases the risk of infection, and can causes sickle cell crisis—severe pain and damage to organs such as the kidney and the spleen. *Id.* The plaintiff alleges that medication—specifically, non-steroidal anti-inflammatory drugs ("NSAIDs") and acetaminophen—can help, as well as blood transfusions. *Id.*

According to the complaint, the plaintiff worked with his "primary healthcare provider" (plaintiff does not clarify who this is) to develop a healthcare plan to address his disease. *Id.* at 9. When less-severe symptoms such as "a new or different headache," "a new pain in any part of the body," or "blood in the urine" presented, the plaintiff was to contact the health services unit (HSU) through an HSU request slip. *Id.* When more severe symptoms, such as "an inability to cope with pain," "an inability to think clearly or feeling like patient is going to pass out," or "loss of vision in one or both eyes," presented, the plaintiff was to contact correction officers for immediate care. *Id.* at 9-10. The plaintiff states that both he and the HSU staff alerted defendants to plaintiff's health care plan. *Id.* at 10.

On July 5, 2014, the plaintiff was housed in the "new" segregation building. Sometime before 9:00 a.m. that day, the plaintiff "began experiencing excruciating pain, nausea, dizziness and feeling as though [he] was about to pass out." Dkt. No. 9 at 10. Consistent with his health care plan, the plaintiff attempted to notify a correctional officer via the medical PA system in his cell. Defendant Ehr received the plaintiff's call, and the plaintiff informed Ehr that that he was going into sickle cell crisis. *Id.* The plaintiff alleges that Ehr indicated he would inform HSU. *Id.* at 11.

According to the plaintiff, the protocol for the new segregation building had been established by defendants Foster, Francois, Bauman, and Van Lanen. That protocol required Ehr to contact the corrections officer assigned to plaintiff's cell range (defendant Potts), and for that officer to go to the cell of the

5

prisoner to confirm and/or make further inquiries. Once Potts had confirmed that the plaintiff was in medical crisis, the plaintiff alleges, he should have contacted one of the sergeants on the unit (that day, defendants Sweetman and Walker), and should have stayed with the plaintiff until one of those sergeants contacted HSU staff. *Id.* The plaintiff alleges that "protocol was not followed in the instant case." *Id.*

According to the complaint, between the time that the plaintiff called for help on the PA system at 9:15 a.m. and 11:15 a.m. when defendant Potts began distributing food trays, the plaintiff passed out, and the back of his head hit a brick wall; the plaintiff alleges that he passed out around 9:30 a.m. When Potts came into his cell around 11:15 (almost two hours after the plaintiff passed out), Potts found the plaintiff on the floor, unresponsive. *Id.* at 11-12. A witness indicates that when Potts saw the plaintiff on the floor, he told the plaintiff to get up and get his lunch, or something along those lines. *Id.* at 12. When the plaintiff didn't respond, Potts closed the meal tray trap and continued distributing meals to other inmates. *Id.*

Again according to witnesses, around 11:35 a.m., defendant Walker came around, looked into the plaintiff's cell, saw him on the floor, and said, "He's fine, he's breathing," or something to that effect. Walker then left. The plaintiff alleges that it was not until 11:48 a.m. that a lieutenant came with an extraction team to remove the unresponsive plaintiff from the cell and take him to the HSU to be examined. Once at HSU, the plaintiff was examined, and the

6

HSU staff determined that he was so ill that he needed immediate hospitalization. *Id.*

The plaintiff alleges that after these events, he read the incident report, and he learned that defendant Ehr had notified Sweetman of the plaintiff's situation, but that it was Sweetman who decided not to notify the HSU staff. *Id.*

The plaintiff alleges that Potts accompanied him to the hospital. During that trip, Potts told the plaintiff that he did not like "his chain being yanked." When the plaintiff responded that he did not play games about his health, Potts indicated that many inmates did play such games, and that he couldn't know when a complaint was really serious. *Id.* The plaintiff alleges that a few months later, on October 12, 2014, he had another sickle cell crisis. *Id.* at 13. When he did not get prompt attention from the HSU staff, the plaintiff asked for a supervisor. He claims that Potts responded that the supervisor was dealing with more important things than sickle cell, which wasn't important. *Id.*

The plaintiff alleges that Walker, Sweetman, Potts, Ehr, Van Lanen and Bauman all would have known of the plaintiff's sickle cell diagnosis, and all would have had a copy of his health care plan, which included instructions on what to do in crisis situations. *Id.* at 13. He states that during the time he was in the new segregation building, these defendants developed a practice of failing to answer when the plaintiff asked for help over the PA system, and that this practice caused him additional pain. *Id.* He alleges that these defendants

7

denied him access to the medicines, monitoring, and other treatments to which he was entitled under his treatment program. *Id.* at 17.

The plaintiff also alleges that on April 3, 2014—three months before the July 5 event described above—he suffered a sickle cell crisis and was escorted to an off-site hospital by defendant Sweetman. *Id.* at 18. The plaintiff alleges that, in addition to using mechanical restraints on the plaintiff during the transport, Sweetman decided to use a "bandit" or "bandit belt," which is a Velcro belt containing an electronic box that can be activated remotely to discharge 5,000 to 10,000 volts of electricity. The belt can be fitted around a person's waist, leg, or arm, although policy indicates that it should not be placed on bare skin. *Id.* at 18-19.

The plaintiff alleges that during the transport to the hospital, Sweetman attempted to place the belt on plaintiff's bare leg. The plaintiff objected, and asked for a supervisor (also known as a "white shirt") to intervene. Defendant Van Lanen, the supervisor, instructed Sweetman to place the belt over the plaintiff's pant leg because the belt could not be placed on bare skin. Sweetman complied, but after Van Lanen left, told plaintiff, "Next time, you do what I say and talk to a white shirt later," then pulled the Velcro straps so painfully tight that they interfered with the blood circulation in plaintiff's leg. *Id.* at 19. Once the plaintiff arrived at the hospital, emergency room staff asked officers to loosen the straps. *Id.* at 20.

The plaintiff alleges claims against defendants Foster, Francois, Bauman, Zwiers, Walker, Sweetman, Potts, Ehr, and Van Lanen for their alleged

8

violations of the United States Constitution and the Americans with Disabilities Act. He seeks declaratory relief, injunctive relief, compensatory damages, and punitive damages.

  C. Legal Analysis of Alleged Facts

    1. *Count One—Eighth Amendment Deliberate Indifference*

In count one of the complaint, the plaintiff alleges that the defendants violated his Eighth Amendment right against cruel and unusual punishment during the events that took place on July 5, 2014. To state an Eighth Amendment claim based on deficient medical care, a plaintiff must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)).

A medical need is considered sufficiently serious if the inmate's condition 'has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would perceive the need for a doctor's attention." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 [7th Cir. 2005]).

The Supreme Court has held that to prove that a defendant acted with "deliberate indifference," a plaintiff must prove more than just negligence, but does not have to prove that the defendant acted with the purpose of harming the plaintiff or with knowledge that harm would result; it is the equivalent of acting recklessly. *Farmer v. Brennan*, 511 U.S. 825, 835-36 (1994).

9

The plaintiff has sufficiently alleged that he has a serious medical need. The question is whether each of the named defendants acted with deliberate indifference to that medical need.

The plaintiff claims that defendants Potts and Walker were deliberately indifferent to his serious medical needs. He alleges that both defendants knew that the plaintiff suffered from sickle cell anemia, yet failed to assist him when they observed him lying unconscious on his cell floor on July 5. The court finds that the plaintiff has alleged sufficient facts to support a claim for deliberate indifference to serious medical need against Potts and Walker.

The plaintiff alleges that Sweetman decided not to contact HSU on July 5, even after Ehr notified him of the plaintiff's condition. This is sufficient to state a claim of deliberate indifference to a serious medical need against Sweetman. The plaintiff's allegation that Sweetman's motivation for not contacting HSU was to get back at the plaintiff for the April 3 confrontation between the two is sufficient to state a claim of retaliation against Sweetman.

The plaintiff also has alleged that defendants Foster, Francois, Bauman, Zwiers, and Van Lanen were deliberately indifferent to his medical needs in that they ignored plaintiff's many requests that they address the correctional officers' practice of not responding to emergency PA system calls, which was a violation of established protocol and resulted in the plaintiff suffering from painful episodes of sickle cell crisis. The court finds that the plaintiff has supported a claim for deliberate indifference against the defendants.

The court cannot find, however, that the plaintiff has alleged sufficient facts to show that defendant Ehr was deliberately indifferent to his serious medical needs. The plaintiff alleges that, after Ehr received the plaintiff's call about his potential sickle cell crisis, Ehr—who was not allowed to leave the call center station— notified Sweetman that the plaintiff was in sickle cell crisis, so that Sweetman could notify HSU. The plaintiff alleges that *Sweetman*—not Ehr—is the one who decided not to contact HSU. These allegations do not demonstrate that Ehr was deliberately indifferent to the plaintiff's medical needs—they actually show that Ehr responded to the plaintiff's medical need. Because the plaintiff has not alleged any facts showing that Ehr was deliberately indifferent to plaintiff's medical needs, the court will dismiss Ehr.

    2.    *Count Two—Eighth Amendment Excessive Force*

In count two, the plaintiff alleges that Sweetman used more restraint, and more force than was necessary, while transporting him to the hospital on April 3, 2014. The Supreme Court has held that in determining whether there was excessive force in violation of the Eighth Amendment, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 599 U.S. 34, 37 (2010), quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The plaintiff is not required to prove "serious injury," *id.*, although a court may consider the extent of the injury in determining whether the level of force applied was necessary to the particular situation. *Id.* (citations omitted). "An inmate who complains of a 'push or shove' that causes no discernible

11

injury almost certainly fails to state a valid excessive force claim." *Id.*, quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973).

The court finds that the plaintiff has alleged sufficient facts to support a claim of excessive force against defendant Sweetman. He alleges that during the April 3 transport, for no reason, Sweetman used not only the mechanical restraints allowed by prison policy, but also used the "bandit" belt. He first tried to apply it directly to the plaintiff's bare skin; defendant Van Lanen prevented this. Sweetman then—apparently in retaliation for the plaintiff saying anything about the placement of the "bandit" belt—pulled the Velcro straps so hard that he cut off the plaintiff's circulation, caused him pain, and caused the ER staff to ask officers to loosen the straps. This is sufficient to support a claim of excessive force against Sweetman.

3.   *Count Three—Failure to Train or Supervise*

The plaintiff captions count three of the complaint as "[a]llowing a custom and policy to continue that discriminate against disabled persons and negligency of supervisors to supervise staff." In this count, he discusses the many requests and complaints he made regarding the failure of corrections officers to respond to his PA requests and to deny him medical treatment. He alleges that Foster, Francois, Bauman, Zwiers and Van Lanen failed to properly train and supervise the correctional officers, despite his complaints.

The plaintiff cannot, however, state a claim based on these defendants' failure to train or supervise correctional officers. The plaintiff does not allege that the correctional officers were following established procedures when they

12

failed to address his medical needs; rather, he alleges that the correctional officers did *not* follow established procedures. In fact, the plaintiff highlights throughout his complaint that procedures existed that would have resulted in plaintiff's medical needs being addressed, had the correctional officers only followed them. Section 1983 makes public employees liable only "for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009); *see George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007). Thus, defendants Foster, Francois, Bauman, Zwiers, and Van Lanen cannot be liable just because others violated procedures that they had established. The court will not allow the plaintiff to proceed on failure to supervise/train claims against these defendants.

4. *References to the Americans with Disabilities Act*

None of the headings in the plaintiff's complaint mention the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.* That law prohibits discrimination against people with disabilities. In the body of count one of the complaint, however, the plaintiff quotes extensively from sections of the ADA. The court is not clear whether the plaintiff means to allege a claim under the ADA—he does not explicitly say so—but the court will address the propriety of such a claim.

The plaintiff misunderstands the purpose of the ADA. The ADA was established to protect individuals with a disability from being discriminated against in contrast to those without a disability. It does not guarantee that every person with a disability must receive treatment for that disability—it

13

provides only that a "public entity" cannot deny a "qualified individual" the benefits of the services, programs or activities of that entity *based on* a disability. *See* 42 U.S.C. §12131; 28 C.F.R. §35.101, *et seq.*

The plaintiff has not alleged that he was treated differently than inmates who did not have sickle cell disease. In fact, he claims that correctional officers at GBCI routinely failed to give *any* inmates their prescribed treatment, and that the correctional officers had a general practice of ignoring *all* inmates. Accordingly, to the extent that the plaintiff was attempting to assert a claim against some or all of the defendants for discrimination under the ADA, the court will not allow him to proceed on such a claim.

## CONCLUSION

The court **GRANTS** plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2).

The court **DISMISSES** defendant Officer Michael Ehr.

The court **ALLOWS** the plaintiff to proceed on his Eighth Amendment deliberate indifference claims against all of the remaining defendants. The court also **ALLOWS** the plaintiff to proceed on his Eighth Amendment excessive force claim against defendant Sweetman.

The court **ORDERS** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, the court will send electronic copies of plaintiff's complaint and this order to the Wisconsin Department of Justice for service on defendants Foster, Francois, Bauman, Zwiers, Walker, Sweetman, Potts and Van Lanen.

14

The court **ORDERS** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this court, defendants Foster, Francois, Bauman, Zwiers, Walker, Sweetman, Potts and Van Lanen shall file a responsive pleading to the complaint within **sixty (60) days** of receiving electronic notice of this order.

The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $327.35 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court **ORDERS** that, pursuant to the Prisoner E-Filing Program, plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. The Prisoner E-Filing Program is in effect at Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility and, therefore, if at any point the plaintiff is no longer incarcerated at one of those institutions, he should submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

The court further advises plaintiff that if he does not timely file documents, the court may dismiss his case for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

The court will send copies of this order to the warden of the institution where the inmate is confined.

Dated at Milwaukee this 24th day of June, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge