# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**TIMOTHY STEVEN DOSS**,

        Plaintiff,

v.

**Case No. 15-cv-6-pp**

**ERIC SWEETMAN, et al.,**

        Defendant.

---

## DECISION AND ORDER DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 21), GRANTING IN PART AND DEFERRING RULING IN PART ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 27), AND SETTING DEADLINES FOR PARTIES TO TAKE CERTAIN ACTIONS

---

      Plaintiff Timothy Steven Doss, who is representing himself, is incarcerated at Green Bay Correctional Institution (GBCI). On June 24, 2015, the court entered an order allowing the plaintiff to proceed on deliberate indifference and excessive force claims. Dkt. No. 10. On December 28, 2015, the plaintiff filed a motion for summary judgment. Dkt. No. 21. On January 8, 2016, the defendants filed a motion for summary judgment. Dkt. No. 27. Both motions are now fully briefed. The court will deny the plaintiff's motion for summary judgment, grant the defendants' motion in part, defer ruling on one defendant's motion, and set deadlines for the parties to take further action.

## I. FACTS[1]

During the events involved in this case, the plaintiff was a prisoner incarcerated at Green Bay Correctional Institution (GBCI). He is suing former and current staff members at GBCI. At the times relevant to this lawsuit, defendant Brian Foster was the warden (Dkt. No. 54 ¶2); defendants Cathy Francois, Ryan Baumann and Jay VanLanen were supervisors in the Program Segregation building (Id. at ¶3); defendant Jeananne Zwiers was the health services manager (titled Nursing Supervisor 2) (Id. at ¶4); defendants Onie Walker and Eric Sweetman were correctional sergeants (Id. at ¶5); and defendant Alan Potts was a correctional officer (Id.).

The plaintiff suffers from sickle cell anemia, which is a condition that causes red blood cells to form into a crescent shape, like a sickle. Dkt. No. 51 ¶18. The sickle-shaped red blood cells break apart easily, causing anemia. Id. Sickle red blood cells live only ten to twenty days instead of the normal 120 days. Id. The damaged sickle red blood cells also clump together and stick to the walls of blood vessels, blocking blood flow. Id. This can cause severe pain and permanent damage to the brain, heart, lungs, kidneys, liver, bones and spleen. Id.

Patients with sickle cell disease may develop severe pain anywhere in their body, and severe pain is an emergency condition called sickle cell crisis.

---

[1] The court takes the facts from "Plaintiff's Objections to Defendants' Proposed Finding of Fact," (Dkt. No. 51) and from "Defendants' Response to Plaintiff's Proposed Findings of Fact" (Dkt. No. 54). The facts are undisputed unless otherwise noted.

Id. ¶19. Treatment of sickle cell crisis may include: opioid pain medications, anti-inflammatory medications, antibiotics for infection, oxygen, and/or intravenous or oral fluids. Id. ¶20.

The plaintiff was transferred to GBCI on January 3, 2014, and sickle cell disease was listed as a significant illness on his transfer screening form. Id. ¶21. Dr. Sauvey (not a defendant), a physician at GBCI, implemented a plan of care with Dr. Warren (not a defendant), a hematologist at Green Bay Oncology who treats the plaintiff. Id. ¶22. Dr. Warren outlined the plaintiff's plan of care after each of the plaintiff's appointments. Id. ¶23. Although correctional officers were not given written documents from the plaintiff's medical files, they were advised via a posted handwritten note that the plaintiff has a significant chronic condition and they should contact health services immediately with any medical complaints from the plaintiff. Id. ¶23, 25.

A.  April 6, 2014

On April 6, 2014[2], the plaintiff was transported to the emergency room following an episode of sickle cell crisis. Id. ¶37, 38. When an inmate is transported to an off-site hospital for medical treatment, GBCI provides supervision of the inmate (called a "vigil"). Id. ¶31. Staff assigned to supervise an inmate during a vigil provide constant monitoring of the inmate at all times. Id. A minimum of two security staff are assigned for supervision when the

---

[2] In the plaintiff's complaint, he alleges the transport to the emergency room occurred on April 3, 2014; on that date, however, the plaintiff had a scheduled, off-site appointment with a specialist, to which he was transported without the use of an electronic control device. Dkt. 51 ¶29, 37. The plaintiff explains in response to the defendants' proposed findings of fact that the correct date of the alleged incident is April 6, not April 3. Dkt. No. 51 ¶37.

inmate is in a segregated status (regardless of classification) or when an inmate has a maximum classification. Id.

In addition, security restraints may be applied when necessary to protect staff, hospital personnel, and the public. Id. ¶36. A security supervisor must authorize increased restraints, although when time does not permit a correctional officer to obtain prior approval, a supervisor may approve their use after the restraints are applied. Id. One form of increased restraint is the Bandit, an electronic control device that is a commercially-manufactured tool approved to be used by trained staff. Id. ¶35. The Bandit is attached to the inmate with Velcro straps. Id. Correctional staff are trained to place the device on an inmate's forearm or calf. Id.

VanLanen authorized the placement of the Bandit on the plaintiff's leg for the April 6 transport. Id. ¶38. Sweetman states that, as he tried to place the Bandit on the plaintiff's bare leg, the plaintiff pulled his leg away. Id. ¶39. Sweetman ordered him not to pull his leg away, and the plaintiff asked to speak with a supervisor. Id. VanLanen arrived, and informed Sweetman that the Bandit should be placed over the plaintiff's pants, rather than on his bare skin. Id. ¶40. Sweetman states that he had been trained to place the Bandit on the bare leg, but he complied with VanLanen's instructions. Id.

The plaintiff states that Sweetman became angry and said to the plaintiff, "Next time, do what I say and talk to a white shirt later." Id. ¶41. Sweetman disputes this characterization. Id. He states that he told the plaintiff that he should have spoken to VanLanen prior to the plaintiff's departure to

4

the hospital given that he would be checked by VanLanen at that time anyway, so there was no reason for the plaintiff to disobey Sweetman's direct order not to pull his leg away. Id. He also told the plaintiff that if he failed to follow direct orders, he could be written up for a conduct report. Id.

The plaintiff states that Sweetman was angry that the plaintiff had talked to VanLanen, so Sweetman over-tightened the Bandit straps. Dkt. No. 54 ¶35. The plaintiff complained the Bandit straps were too tight. Dkt. No. 51 ¶42. Sweetman states the health services nurse and VanLanen both checked the straps and determined that Sweetman had properly applied them. Id. When the plaintiff mentioned to VanLanen that the straps were tight, VanLanen told him that they felt tight because the plaintiff was kneeling, and they would not feel tight once he stood up. Id. ¶44. Once he stood up, the plaintiff did not complain to VanLanen about the straps, nor did the plaintiff ever complain that the straps were causing him pain. Id. Sweetman explains that he would not have been at liberty to loosen the straps without permission from a security supervisor. Id. ¶42.

B.   July 5, 2014

The plaintiff alleges that on July 5, 2014, at about 8:30 a.m. to 8:45 a.m., he began to experience excruciating pain, nausea, dizziness, and feeling as if he was about to pass out. Dkt. No. 54 ¶23. The plaintiff states that he recognized the symptoms as on-coming sickle cell crisis. Id. In line with his healthcare plan, the plaintiff contacted a correctional officer via his cell's intercom system and asked that the officer notify health care services staff. Id.

5

The plaintiff states that Officer Vang (not a defendant) answered the call at 9:00 a.m. and noted in the logbook "sickle cell hurts bad." Id. According to the plaintiff, Vang then notified Sweetman, and indicated in the logbook that he'd done so. Id.

According to the plaintiff, when an inmate reports a medical emergency via the cell intercom, the correctional officer answering the call is to notify the staff member assigned to the cell range, who should investigate the nature of the medical emergency. Id. If a medical emergency is confirmed, the staff member should notify the sergeant and remain at the cell to monitor the situation. Id. The sergeant then should notify the line supervisor and, if necessary, health services staff. Id.

When no one arrived and his condition worsened, the plaintiff indicates that he informed another inmate (Dennis Mix) that he felt faint, and he asked the inmate to press his emergency call button. Id. The plaintiff again reported that he was having difficulties at about 9:15 a.m. Id. The plaintiff then became dizzy and fell unconscious, hitting his head on the wall behind him. Id. Sweetman never reported to the plaintiff's cell to follow up on the plaintiff's call.

According to another inmate, Potts arrived at the plaintiff's cell at about 11:15 a.m. to distribute meal trays to inmates. Id. The inmate told the plaintiff that Potts saw him lying on the floor but he did not get help. Id. Instead, Potts taunted the plaintiff, and when he received no response, Potts secured the trap door and continued distributing meal trays. Id.

At about 11:35 a.m., defendant Walker observed the plaintiff lying on the floor and, according to the plaintiff, said, "He's fine, he's breathing." Id. The plaintiff states that Walker contacted the security supervisor at about 11:45 am. Id. Walker, who was new to GBCI and not yet familiar with the inmates or GBCI procedures, states that he contacted Lt. Michael Helmeid (not a defendant) after he observed Doss lying on his cell floor by the door. Dkt. No. 51¶49. Walker indicates that the other inmates were yelling that the plaintiff was having a sickle cell attack. Id.

Helmeid ordered officers to open the cell door and secure the plaintiff. Id. ¶52. At approximately 11:50 a.m., Nurse Bost (not a defendant) examined the plaintiff and notified him that he would be transported to the local emergency room via ambulance. Id. ¶58.

The plaintiff states that Potts rode with him in the ambulance. Id. ¶77. Potts states that he did not ride to the hospital in the ambulance, but instead arrived at the hospital after the plaintiff was admitted in order to provide security supervision for the plaintiff. Id. The plaintiff expressed to Doss that he felt staff did not believe him. Id. ¶79. Potts indicates that he told the plaintiff that there are many inmates who falsely report medical issues, and that the officers do not like "having their chain yanked." Id.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

7

judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### B. The Exhaustion Requirement

Before filing a §1983 claim in federal court, prisoners must properly exhaust their administrative remedies by completing the administrative review process in accordance with the applicable procedural rules. Jones v. Bock, 549 U.S. 199, 219, 220 (2007). "[P]risoner[s] must file [their] complaints and

8

appeals in the place, and at the time, the prison's administrative rules require.[.]" Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). The failure to properly complete each step in the inmate complaint process constitutes failure to exhaust available administrative remedies. Id.

The purpose of exhaustion is to provide "the prison system with prompt notice of problems" and "an opportunity to address a situation," so that their first notice of a claim isn't in the form of a lawsuit. Smith v. Zachary, 255 F.3d 446, 450-51 (7th Cir. 2001). "[A] case filed before exhaustion has been accomplished must be dismissed." Perez v. Wisconsin Dept. of Corrections, 182 F.3d 532, 537 (7th Cir. 1999).

### 1. Excessive Force Claim Against Sweetman and Deliberate Indifference Claim Against Potts

The defendants argue that the plaintiff failed to exhaust his administrative remedies on his claim that Sweetman used excessive force when he over-tightened the Velcro Bandit bands in April 2014, while transporting the plaintiff to the hospital. Dkt. No. 28 at 11. They note that a review of the inmate complaint history showed that the plaintiff made no inmate complaints about this claim. Id. The plaintiff "disputes" this fact (Dkt. No. 51 ¶136); however, a party asserting that a fact is genuinely disputed must support such an assertion by citing to particular parts of materials in the record, including documents, affidavits or declarations, admissions, or other materials. The plaintiff fails to do so, and therefore has not created a genuine dispute as to a material regarding whether he exhausted this claim before including it in this lawsuit.

9

Similarly, the defendants argue that the plaintiff did not exhaust his claim that in October 2014, Potts demonstrated deliberate indifference to his serious medical need when Potts told the plaintiff that the security supervisor had more important things than the plaintiff's condition to address. Dkt. No. 28 at 17. While the plaintiff did file an inmate complaint about an incident that occurred on October 12, 2014, he made no mention of Potts in that complaint. Dkt. No. 28 at 17. Further, the inmate complaint examiner dismissed the complaint, and the plaintiff failed to timely appeal. Id. Doss does not dispute that he did not appeal this inmate complaint; thus, his failure to exhaust his administrative remedies as to this claim is undisputed. Dkt. No. 51 ¶132.

The plaintiff also appears to have abandoned these claims. He states in his response materials that he included the April 2014 and October 2014 incidents only as a way of providing context for the July 2014 incident. Id. ¶35, 37. In fact, he explains these claims are "not part of the civil suit itself." Id. ¶35.

For these reasons, the court will grant the defendants' motion for summary judgment with regard to the April 2014 excessive force claim against Sweetman and the October 2014 deliberate indifference claim against Potts.

C. The Personal Involvement Requirement

To support an Eighth Amendment claim against a particular individual under §1983, plaintiff must show that that individual had "*actual* knowledge" that he was "at risk of serious harm." Pittman ex rel. Hamilton v. County of Madison, Ill., 746 F.3d 766, 778 (7th Cir. 2014) (emphasis in original). This is

10

because §1983 makes public employees liable "for their own misdeeds but not for anyone else's." Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009). An individual cannot be held liable in a §1983 action unless he caused or participated in an alleged unconstitutional deprivation of rights. Zentmeyer v. Kendall County, 220 F.3d 805, 811 (7th Cir. 2000). Further, a plaintiff cannot maintain an action against a defendant based only on the defendant's supervisory role. T.E. v. Grindle, 599 F.3d 583, 588 (7th Cir. 2010).

The court allowed the plaintiff to proceed on his claim that Foster, Francois, Bauman, Zwiers and VanLanen violated the Eighth Amendment when they ignored the plaintiff's requests that they address the correctional officers' practice of not responding to inmates' calls for help over the emergency intercom system. Since the time the court screened the complaint, however, the plaintiff has not provided any evidence to support his claim that these defendants had actual knowledge of this alleged practice.

The plaintiff argues that from June 24, 2010, through June 24, 2015, inmates filed ten complaints about intercom or emergency button issues. Dkt. No 54 ¶25. The plaintiff states that he filed five of those complaints. Id. The plaintiff does *not*, however, provide any evidence that these particular defendants viewed, or even knew about, these complaints. Instead, the plaintiff argues that each defendant "would have more likely than not been interviewed by the [inmate complaint examiner] in the resolution of the [. . .] grievances . . . ." Dkt. No. 54 ¶32. This is speculation, and is insufficient at the summary judgment stage to create a genuine dispute as to a material fact.

11

According to the defendants, the plaintiff filed two inmate complaints about officers failing to answer his emergency calls. Dkt. No. 28 at 19-20. For one of the complaints, which was affirmed, the inmate complaint examiner did not contact any of these particular defendants, and none of these particular defendants were reviewers of the complaint. Id. at 19. For the other complaint, which was denied, the inmate complaint examiner did not contact any of these particular defendants, and only defendant Foster reviewed the dismissal of the complaint. Id. at 19-20. Foster agreed with the inmate complaint examiner's determination that staff members had timely contacted health services (i.e., contrary to the plaintiff's complaint, the staff *did* answer the emergency call), and monitored the plaintiff until health services personnel arrived. Id.

Because §1983 makes individuals liable only for their own acts, and because the plaintiff has failed to present evidence which raises a genuine dispute of material fact about whether defendants Foster, Francois, Bauman, Zwiers, and VanLanen had actual knowledge of complaints that correctional staff were ignoring his (or anybody else's) calls for help made via the emergency intercom system, the court must grant summary judgment in favor of these defendants on the Eighth Amendment claim.

### D. The Eighth Amendment Deliberate Indifference Standard

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective

12

element (i.e., that the medical needs be sufficiently serious) and a subjective element (i.e., that the officials act with a sufficiently culpable state of mind). Id. The plaintiff alleges that defendants Sweetman, Potts and Walker were deliberately indifferent to his serious medical needs on July 5, 2014, when the plaintiff suffered a sickle cell crisis.

For purposes of summary judgment, the defendants have conceded that the plaintiff is a lifelong sufferer of sickle cell anemia. Dkt. No. 54 ¶10. This is a serious condition that may result in life-threatening symptoms. Id. ¶13. The court finds, therefore, that the plaintiff has satisfied the objective element of the above standard. The court's analysis will focus only on the subjective element, *i.e.,* whether Potts, Walker and/or Sweetman were deliberately indifferent to the plaintiff's condition. The court will address each defendant in turn.

   *1. Alan Potts*

Potts states that on July 5, 2014, he was not aware of the plaintiff's diagnosis. Dkt. No. 51 ¶80. He concedes, however, that he had been instructed to report any medical complaints from the plaintiff to health services. Id. The plaintiff alleges that Potts arrived at his cell at 11:15 a.m. to distribute the lunch meal trays. Dkt. No. 54 ¶23. The plaintiff was unconscious, and an inmate in the cell next to his heard Potts say something along the lines of, "Set [sic] up and get your food tray." Dkt. No. 26 at 2. When Potts received no response from the plaintiff, the other inmate indicates that Potts closed the

13

plaintiff's trap door and continued distributing the meal trays to the inmates. Dkt. No. 54 ¶23. Potts does not address these allegations. See Dkt. No. 44.

The parties agree that later that day, Potts and the plaintiff had a conversation about the staff's failure to respond to the plaintiff's calls for help. Dkt. No. 51 ¶78. (The parties dispute when and where this conversation occurred, but the time and place of the conversation are not material.) The plaintiff states that Potts told him that, "[H]e did not 'like his chain being yanked,'" and when the plaintiff said he didn't play games with his medical condition, Potts responded along the lines of, "[A] lot of inmates do play games and [he] never know[s] when it is really serious . . . ." Dkt. No. 9 at 12. Potts admits that he made comments of this nature; however, he states that he was speaking generally, and was not implying that he felt the plaintiff had been falsely reporting his condition and/or symptoms. Dkt. No. 51 ¶78.

In the defendants' brief in support of their motion for summary judgment, the defendants argue that "Potts had no involvement with [the plaintiff] on [July 5, 2014] until at the hospital where Potts [was] one of the officers assigned to 'vigil' duty." Dkt. No. 28 at 15. This assertion is not supported by Potts's affidavit. While it is true that Potts disputes riding in the ambulance with the plaintiff (he states he met the plaintiff at the hospital), nowhere does Potts dispute that he saw the plaintiff lying on his cell floor earlier in the day while Potts was handing out meal trays.

Because the defendants' argument that Potts did not encounter the plaintiff until *after* he had been admitted to the hospital is not supported, the

14

court is left to speculate about when Potts first encountered the plaintiff. The court cannot decide, without further information, whether Potts was deliberately indifferent to the plaintiff's serious medical needs. Pursuant to Federal Rule of Civil Procedure 56(e)(1) the court will give the defendants **seven days** from the entry of this order to properly support their argument that Potts's first observation of the plaintiff on July 5, 2014, occurred after the plaintiff had been transported to the hospital. For the time being, the court will hold its decision on this claim in abeyance.

> 2.  *Onie Walker*

Walker states that on July 5, 2014, he observed through the window in the plaintiff's cell that the plaintiff was lying on the floor by his door. Dkt. No. 51 ¶49. Walker states that he was new to GBCI and was not yet familiar with the inmates; however, other inmates were yelling that the plaintiff was having a sickle cell attack. Id. ¶50. Walker contacted the security supervisor, lieutenant Michael Helmeid, who reported to the plaintiff's cell. Id. ¶48. Walker was waiting at the cell, and briefed Helmeid on the situation, when Helmeid arrived. Id.

The plaintiff does not dispute these allegations, but he does submit the affidavit of another inmate who states that Walker said something similar to, "He's breathing; he's fine." Dkt. No. 26 at 2. This statement, standing alone, is insufficient to create a genuine question about whether Walker was deliberately indifferent to the plaintiff's medical condition. Regardless of what Walker may have *said*, his *actions* cannot be characterized as being deliberately indifferent

15

to the plaintiff's condition. The undisputed facts show that after Walker, who was new to the institution and unfamiliar with the plaintiff's condition, observed the plaintiff lying unconscious on the floor, he immediately contacted the security sergeant. He then waited outside the cell door, as required by protocol, for the security sergeant to arrive and give further instructions. The court finds that, as a matter of law, Walker was not deliberately indifferent to the plaintiff's medical needs, so the court will dismiss the plaintiff's claim against him.

### 3. Eric Sweetman

The plaintiff states (based on an inmate complaint investigator's report) that on July 5, 2014, at approximately 9:00 a.m., after he pressed his emergency button, the officer who took the call indicated in the logbook that, per protocol, he notified Sweetman of the plaintiff's call. Dkt. No. 51 ¶65. The officer also wrote "sickle cell hurts bad" in the logbook. Id. The plaintiff states that, although protocol required Sweetman to check on the plaintiff, Sweetman never came to his cell. The plaintiff also indicates that, after his second call at 9:15 a.m., the officer wrote "HSU NOT" in the logbook. Dkt. No. 30-2 at 3. The inmate complaint examiner indicated in her report that "HSU NOT" meant health services was not on the unit. Id. She also stated in her report that she could "find no evidence that security staff contacted HSU at 9:00 when [the plaintiff] first requested medical attention." Id.

Sweetman states that on July 4 to July 5, 2014, he worked the third shift—from 10:00 p.m. until 6:00 a.m.—and that his official time sheet shows

16

that he finished his July 5 shift at 6:00 a.m. Dkt. No. 51 ¶65. In other words, the time sheet shows that Sweetman was not at the institution on July 5 when the plaintiff called for help at 9:00 a.m. Id.

The plaintiff attempts to dispute Sweetman's statements by pointing to the complaint examiner's report. The complaint examiner who wrote the report upon which the plaintiff relies, however, stated that after reviewing Sweetman's timesheets, she now believes that her findings in the report with regard to Sweetman's failure to respond were incorrect. Id. ¶137. She indicates that the writing in the logbook is small and difficult to decipher. Id. (The defendants do not identify in their summary judgment materials the sergeant who was informed of the plaintiff's call for help.) In addition, she indicates, presumably for the first time, that her finding that "HSU NOT" meant that health services was "not on unit" was also erroneous. Dkt. No. 30 ¶31. She now states that "HSU NOT" means that HSU personnel were "notified." Id.

If Sweetman was not working at the time the plaintiff called for help, he cannot have been deliberately indifferent to the plaintiff's medical condition. Case law with respect to §1983 claims is clear that individuals are liable only for their own misdeeds, not the misdeeds of others. Burks, 555 F.3d at 596. In light of the complaint examiner's statements that the findings in her report with respect to Sweetman's involvement were erroneous, the plaintiff has failed to show that there is a genuine dispute about Sweetman's involvement. For this reason, the court will dismiss the plaintiff's deliberate indifference claim against Sweetman.

17

That said, in the interest of justice and fairness, the court will allow the plaintiff the opportunity to seek leave to amend his complaint to substitute for Sweetman the sergeant who was contacted by the officer who answered the plaintiff's call. In addition, up to this point, based on the findings in the complaint examiner's report, the plaintiff believed that no one at health services was notified; he now knows that is not the case. Accordingly, the plaintiff may, if he chooses, ask the court's permission to add a deliberate indifference claim against the relevant health services staff. The court assumes that the plaintiff is unaware of the proper names of the sergeant and the health services staff, so the plaintiff may have to initially identify these individuals as John and Jane Does. If, within **thirty days** of the date of this order, the court receives from the plaintiff a motion for leave to amend the complaint, along with a proposed amended complaint, it will screen the amended complaint pursuant to 28 U.S.C. §1915A.

To be clear: the court has dismissed the plaintiff's claims against Sweetman, Foster, Francois, Baumann, Zwiers, Walker and VanLanen. The court will not allow the plaintiff to proceed on claims against those individuals in an amended complaint. The court is holding its decision on the plaintiff's deliberate indifference claim against Potts in abeyance, so the plaintiff may include that claim in his amended complaint, if he so chooses. The only other claims that the plaintiff may include in the amended complaint are a deliberate indifference claim against the unidentified sergeant who was contacted by the

18

officer who answered the plaintiff's July 2014 calls and a deliberate indifference claim against the relevant health services personnel.

## III. CONCLUSION

The court **ORDERS** that the plaintiff's motion for summary judgment (Dkt. No. 21) is **DENIED**. The court further **ORDERS** that the defendants' motion for summary judgment (Dkt. No. 27) is **GRANTED** with as to defendants Eric Sweetman, Brian Foster, Cathy Francois, Ryan Baumann, Jeanne Zwiers, Onie Walker and Jay VanLanen.

The court **HOLDS IN ABEYANCE** its decision on the defendants' motion for summary judgment with regard to defendant Alan Potts. Pursuant to Fed. R. Civ. Pro. 56(e), the court **ORDERS** defendant Potts to provide the information requested in Section 2(D)(1) of this decision within **seven days** of the date of this order. Failure to do so will result in the court finding the allegations at issue to be admitted for purposes of summary judgment.

Finally, the court **ORDERS** that within **thirty days of the date of this order**, the plaintiff may, if he chooses, ask the court for permission to file an amended complaint in accordance with this order. The court cautions the plaintiff that his motion and his proposed amended complaint must comply with Civil Local Rule 15.

Dated in Milwaukee, Wisconsin this 30th day of September, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge