UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**TIMOTHY STEVEN DOSS**,

            Plaintiff,

   v.

**ERIC SWEETMAN, et al.**,

            Defendant.

**Case No. 15-cv-6-pp**

---

**DECISION AND ORDER DENYING PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT AS TO ALAN POTTS (DKT. NOS. 21, 27) AND SCREENING THE PLAINTIFF'S AMENDED COMPLAINT (DKT. NO. 66)**

---

Plaintiff Timothy Steven Doss, who is representing himself, is incarcerated at Wisconsin Resource Center. On June 24, 2015, the court entered an order allowing him to proceed on deliberate indifference and excessive force claims. Dkt. No. 10. On December 28, 2015, the plaintiff filed a motion for summary judgment. Dkt. No. 21. On January 8, 2016, the defendants filed a cross-motion for summary judgment. Dkt. No. 27.

On September 30, 2016, the court entered an order denying the plaintiff's motion and granting the defendants' motion as to defendants Eric Sweetman, Brian Foster, Cathy Francois, Ryan Baumann, Jeanne Zwiers, Onie Walker, and Jay VanLanen. Dkt. No. 62. The court held in abeyance its decision on the cross-motions as to defendant Alan Potts. Id. The court ordered Potts to provide additional information to the court to assist it in making its

1

decision. Id. Potts filed supplemental proposed findings of fact and a supplemental declaration on October 7, 2016. Dkt. Nos. 63, 64. The plaintiff filed his own declaration in response on November 14, 2016. Dkt. No. 67.

Finally, the court also ordered that the plaintiff could file an amended complaint limited to the claims described in the order. Dkt. No. 62 at 18. The court allowed the plaintiff to do so in the interest of justice, because the plaintiff originally had named the wrong defendant (and potentially omitted others) as a result of relying on inaccurate information given to him by a prison official. Id. at 16-18. The plaintiff filed an amended complaint on November 14, 2016. Dkt. No. 66.

This decision resolves the cross-motions for summary judgment on the plaintiff's claim against Potts, and screens the plaintiff's amended complaint.

## I. THE PLAINTIFF'S CLAIM AGAINST POTTS

### A. The Relevant Facts[1]

At all relevant times, defendant Alan Potts was a correctional officer at Green Bay Correctional Institution. (Dkt. No. 54 ¶2).

The plaintiff suffers from sickle cell anemia, which is a condition that causes red blood cells to form into a crescent shape, like a sickle. Dkt. No. 51 ¶18. The sickle-shaped red blood cells break apart easily, causing anemia. Id. Sickle red blood cells live only 10 to 20 days instead of the normal 120 days.

---

[1] The court takes the facts from "Plaintiff's Objections to Defendants' Proposed Finding of Fact," (Dkt. No. 51), "Defendants' Response to Plaintiff's Proposed Findings of Fact" (Dkt. No. 54), and Defendants' Supplemental Proposed Findings of Fact (Dkt. No. 63). The facts are undisputed unless otherwise noted.

2

Id. The damaged sickle red blood cells also clump together and stick to the walls of blood vessels, blocking blood flow. Id. This can cause severe pain and permanent damage to the brain, heart, lungs, kidneys, liver, bones, and spleen. Id.

Patients with sickle cell disease may develop severe pain anywhere in their body, and severe pain is an emergency called sickle cell crisis. Id. ¶19. Treatment of sickle cell crisis may include: opioid pain medications, anti-inflammatory medications, antibiotics for infection, oxygen, and/or intravenous or oral fluids. Id. ¶20.

The plaintiff was transferred to GBCI on January 3, 2014, and sickle cell disease was listed as a significant illness on his transfer screening form. Id. ¶21. Dr. Sauvey (not a defendant), a physician at GBCI, implemented a plan of care with Dr. Warren (not a defendant), a hematologist at Green Bay Oncology who treats the plaintiff. Id. ¶22. Dr. Warren outlined the plaintiff's plan of care after each of the plaintiff's appointments. Id. ¶23. Although correctional officers were not given written documents from the plaintiff's medical files, they were advised via a posted note that the plaintiff has a significant chronic condition and they should contact health services immediately with any complaints from the plaintiff. Id. ¶23, 25.

    *1. July 5, 2014*

The plaintiff alleges that on July 5, 2014, around 8:30 a.m. to 8:45 a.m., he began to experience excruciating pain, nausea, dizziness, and feeling as if he was about to pass out. Dkt. No. 54 ¶23. The plaintiff states that he

3

recognized the symptoms as on-coming sickle cell crisis. Id. In line with his healthcare plan, the plaintiff contacted a correctional officer via his cell's intercom system and asked that he notify health care services staff. Id.

The plaintiff states that Officer Vang (not a defendant) answered the call at 9:00 a.m. and noted in the logbook "sickle cell hurts bad." Id. When no one arrived and his condition worsened, the plaintiff informed another inmate that he felt faint, and he asked the inmate to press his emergency call button. Id. At about 9:15 a.m., the plaintiff again reported that he was having difficulties Id. The plaintiff then became dizzy and fell unconscious, hitting his head on the wall behind him. Id.

According to another inmate, Potts arrived at the plaintiff's cell at about 11:15 a.m. to distribute meal trays to inmates. Id. The inmate told the plaintiff that Potts saw him lying on the floor, but Potts did not get help. Id. Instead, Potts taunted the plaintiff, and when he received no response, Potts secured the trap door and continued distributing meal trays. Id.

Potts states that he does not specifically recall the July 5, 2014 incident. Dkt. No. 63 ¶139. He explains that, generally, if he observes an inmate lying on the floor during meal time, he will attempt to get the inmate's attention Id. ¶140. He states that it is not uncommon for inmates to lie on the floor or not verbally respond to an officer. Id. If an inmate does not respond, Potts will ensure the inmate is breathing and will notify the unit sergeant. Id.

Potts explains that, although he does not recall this specific event, if the plaintiff had been lying on the floor and not responding, Potts would have

4

acted consistent with his training and would have looked for a rise or fall of his chest and/or body movement to ensure the plaintiff was breathing. Id. ¶141. Potts states that he likely would have finished feeding the rest of the wing as it would have taken only a few minutes to do so, then he would have informed the sergeant that the plaintiff was lying on the floor and not responding to Potts' verbal requests. Id. Potts asserts that it is likely that he followed this procedure because Walker (whom the court dismissed as a defendant) arrived to evaluate the plaintiff at about 11:35 a.m. Id.

The plaintiff states that Potts rode with him in the ambulance. Dkt. No. 51 ¶77. Potts states that he did not ride to the hospital in the ambulance, but instead arrived at the hospital after the plaintiff was admitted in order to provide security supervision for the plaintiff. Dkt. No. 44 at ¶7. Potts indicates that at the hospital, and the plaintiff had a conversation, and the plaintiff told Potts that he felt staff did not believe him. Id. ¶8. Potts indicates that he told the plaintiff that there are many inmates that falsely report medical issues, and the officers do not like "having their chain yanked." Id.

B. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that

5

"might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

C. The Eighth Amendment Deliberate Indifference Standard

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). This standard contains both an objective element (that the medical needs be sufficiently serious) and a subjective element (that the officials act with a sufficiently culpable state of mind). Id. A prison official acts with a sufficiently culpable state of mind when he or she knows of a substantial risk of harm to an inmate and either acts or fails to act

6

in disregard of that risk. Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). "Deliberate indifference 'is more than negligence and approaches intentional wrongdoing.'" Arnett v. Webster, 658 F.3d 742, 759 (7th Cir. 2011) (quoting Collignon v. Milwaukee Cnty., 163 F.3d 982, 988 (7th Cir. 1998)).

D. The Court's Analysis

For purposes of summary judgment, Potts has conceded that the plaintiff is a lifelong sufferer of sickle cell anemia. Dkt. No. 54 ¶10. This is a serious condition that may result in life-threatening symptoms. Id. ¶13. Therefore, the court finds that the plaintiff satisfies the objective element of the above standard. The court's analysis will focus only on the subjective element, i.e., whether Potts was deliberately indifferent to the plaintiff's condition.

Potts states that, while he was not aware of the plaintiff's diagnosis, he had been instructed to report any medical complaints from the plaintiff to health services. The plaintiff alleges that Potts arrived at his cell at 11:15 a.m. to distribute the lunch meal trays. The plaintiff was unconscious, and an inmate in the cell next to his heard Potts say something along the lines of, "Set [sic] up and get your food tray." Dkt. No. 26 at 2. When Potts received no response from the plaintiff, the other inmate indicates that Potts closed the plaintiff's trap door and continued distributing the meal trays to the inmates.

Potts does not affirmatively dispute these allegations; instead, he states only that he does not remember what happened on July 5, 2014. He explains that he *likely* acted consistent with his training, which required that he confirm the inmate was breathing and then report the incident to the unit sergeant. He

7

states that he *probably* would have finished distributing the lunch trays because it would have taken only a few additional minutes to do so. Potts points to the fact that the unit sergeant arrived at the plaintiff's cell about twenty minutes later as evidence that he *likely* followed this procedure.

Potts cannot carry his burden on summary judgment because he cannot remember what he did or didn't do that day. See Omni-Circuits, Inc. v DRP, Inc., No. 85 C 9081, 1987WL7290, at *4 (N.D. Ill. Feb. 23, 1987) (holding that "lack of memory is not equivalent to a positive statement" and therefore is not sufficient to carry burden on summary judgment). Further, while Potts points to the arrival of the unit sergeant as evidence that he acted consistent with his training, the court notes that the sergeant did not arrive until twenty minutes after Potts encountered the plaintiff. In addition, Potts states that, even though he had been instructed to contact health services with the plaintiff's medical complaints, it is likely that he would have delayed doing so in order to finish delivering the lunch trays.

The court finds that a reasonable jury could conclude that Potts' decision to delay contacting the unit sergeant by a few minutes and/or his failure to contact health services as instructed in the posted note demonstrated deliberate indifference to the plaintiff's serious medical needs. Admittedly, a reasonable jury also could conclude that Potts had insufficient information about the plaintiff's condition to understand the serious implications of the plaintiff's lack of response and, therefore, that a delay of a few minutes in contacting the unit sergeant as his training required demonstrated only

8

negligence (which is not actionable under §1983), not deliberate indifference. Either way, there exists a genuine dispute as to an issue of material fact, and thus, neither party is entitled to summary judgment on the plaintiff's deliberate indifference claim against Potts.

## II. SCREENING THE PLAINTIFF'S AMENDED COMPLAINT

As permitted by the court, the plaintiff filed an amended complaint on November 14, 2016. Dkt. No. 66. Federal law requires that the court screen complaints, including amended complaints, brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

9

misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, the court "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendant(s): 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Village of North Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give a plaintiff's pro se allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

A.  The Plaintiff's Allegations

The plaintiff alleges that he suffers from sickle cell anemia, a blood disorder where the blood does not get enough oxygen. Dkt. No. 66 at 3. On July 4, 2014, while housed at Green Bay Correctional Institution, the plaintiff began

10

to experience severe pain, so he pushed his cell's emergency call button and informed the officer in the "control bubble" that he was experiencing a sickle cell attack. Id. The officer, who is not named as a defendant, told the plaintiff that he would inform the health services unit. Id.

The plaintiff then asked another inmate to also push his emergency call button. Id. at 4. The officer once again said he would call the health services unit. Id. The plaintiff pushed his call button yet another time. Id. At some time between 9:15 a.m. and 9:30 a.m., the plaintiff again tried to push his call button, but he fell down and hit his head against the wall, knocking himself unconscious. Id.

The plaintiff alleges that the officer contacted defendant John Doe sergeant to inform him that the plaintiff was experiencing sickle cell crisis. Id. at 6. The plaintiff alleges that John Doe did not notify medical staff even though it had been documented in the log book on a sticky note to contact health services promptly if the plaintiff complained of an attack. Id. at 6, 7.

About two hours later, at 11:15 a.m., defendant Alan Potts[2] began to pass out the afternoon meal trays. Id. at 4. When he arrived at the plaintiff's cell, the plaintiff was lying unresponsive on the floor. Id. Potts said to the

---

[2] While the plaintiff fails to name Alan Potts in the caption of his amended complaint or in the section entitled "Parties," the plaintiff refers to "defendant" Alan Potts in the body of his amended complaint (Dkt. No. 66 at 4) and directs numerous allegations at him (Id. at 4-6). The court concludes that the omission was merely an oversight and does not indicate the plaintiff's intention to drop his claim against Potts. The plaintiff's allegations against Potts in his amended complaint are substantively the same as those in his original complaint. The court will not require Potts to respond to the plaintiff's amended complaint, but, as explained later in this order, will wait for the plaintiff's new claim to catch up procedurally with his claim against Potts.

11

plaintiff, "Get up and get your lunch tray." Id. When he received no response, Potts did not get help but simply continued to pass out the lunch trays. Id.

At about 11:48 a.m., the plaintiff finally was removed from his cell and assessed by medical staff. Id. at 5. He was sent to the emergency room for sickle cell anemia crisis and a head injury. Id.

The plaintiff states that Potts was assigned to go with the plaintiff to the emergency room. Id. While there, Potts stated that he did not like his "chain being yanked" and that a lot of "inmates play games," so you don't know when an inmate is really serious. Id. The plaintiff also states that, on October 12, 2014, Potts indicated that he did not believe the plaintiff's condition was serious. Id. The plaintiff argues that these comments demonstrate that Potts had made up his mind about the plaintiff's condition, which is why he did not get the plaintiff help on July 5. Id. at 6.

Finally, the plaintiff alleges that defendants Jean Lutsey, Kathy Lemens, Mary Alsteen, C. Baier, H. Utter, Swijas, and Cpt. Van Gheem violated his rights because, despite being aware of the seriousness of his condition, they failed to sufficiently educate the correctional officers on his plan of care and the procedures to be followed in the event the plaintiff complained of a crisis. Id. at 6-8. Instead, they "only posted a handwritten note that plaintiff has a significant, chronic condition and that they should contact health service[s] immediately with any medical complaints." Id. at 8.

B. The Court's Analysis

The plaintiff may proceed on an Eighth Amendment deliberate indifference claim against defendant John Doe based on his allegations that John Doe failed to either check on the plaintiff or contact health services after being notified that the plaintiff was complaining of severe pain and a potential sickle cell crisis.

The plaintiff may not, however, proceed on his claim that defendants Jean Lutsey, Kathy Lemens, Mary Alsteen, C. Baier, H. Utter, Swijas, and Cpt. Van Gheem were deliberately indifferent to his serious medical needs when, rather than issuing a formal memo, they opted to place a sticky note on the logbook instructing officers to contact health services in the event the plaintiff should make any medical complaints. The plaintiff is entitled to privacy in connection with his health condition. The defendants took steps to both protect his privacy and ensure that his medical complaints would be taken seriously. The plaintiff acknowledges that they communicated the necessary information to the officers—*how* they communicated it (e.g., via a formal memo, a staff meeting, or a sticky note in a common area) is irrelevant.

**III.    CONCLUSION**

Ordinarily, the court would schedule a trial date on a claim that survives summary judgment; this case is procedurally unusual, however, in that the court is allowing the plaintiff to proceed on a new claim against a new defendant despite the fact that the court already has ruled on the parties' motions for summary judgment. For the sake of judicial economy, the court

13

will put the plaintiff's claim against Potts on hold until the plaintiff's claim against John Doe "catches up" procedurally.

Because the plaintiff does not know the proper name of John Doe, the court will allow him to conduct limited discovery on that topic. The plaintiff may serve discovery on Potts for the limited purpose of discovering the proper name of John Doe. The plaintiff may not serve requests on any topic other than that one, and Potts is not obligated to respond to requests on any topic other than that one. Once the plaintiff identifies John Doe, he should file a motion to substitute John Doe's real name for the "John Doe" placeholder. Once the plaintiff has identified John Doe, the court will order service of the amended complaint on him.

The court will give the plaintiff sixty days to identify John Doe. If he does not identify John Doe by the deadline or explain to the court why he is unable to identify him by the deadline, the court will dismiss the claim against John Doe.

The court **ORDERS** that the parties' cross-motions for summary judgment respect to Alan Potts are **DENIED**. Dkt. Nos. 21, 27.

The court further **ORDERS** that the plaintiff may serve limited discovery on Potts to identify John Doe. The plaintiff must identify the John Doe defendant by **March 14, 2017**, or the court will dismiss John Doe as a defendant.

The court also **ORDERS** that Jean Lutsey, Kathy Lemens, Mary Alsteen, C. Baier, H. Utter, Swijas, and Cpt. Van Gheem are **DISMISSED**.

Dated in Milwaukee, Wisconsin this 12th day of January, 2017.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge